UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JOHN MILLER, WALTER BENNETT and CHARLES BIRCHALL et al., <br><br> Plaintiffs, <br><br> v. <br><br> SPINEFRONTIER, INC., et al., <br><br> Defendants. | 15-cv-12877-LTS <br> 15-cv-12908-LTS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO STAY PROCEEDINGS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................................... 5

    A.    Relator-Plaintiffs' Retaliation Claims Are Intertwined With The Substantive
Allegations Under The False Claims Act and Anti-Kickback Statute....................................... 7

    B.    The Criminal Investigation Is Based On The Same Facts And Issues As This Litigation
8

    C.    The Prejudice To Chin and Humad Outweighs The Interest To Plaintiffs And Weighs In
Favor Of A Stay .................................................................................................................. 10

    D.    A Stay Would Promote the Convenience of this Court and Would Have No Impact on
the Criminal Court .............................................................................................................. 13

    E.    Interest of Third Parties ................................................................................................. 15

    F.    The Public Interest is Stronger in the Criminal Case ....................................................... 15

    G.    Good Faith of Litigants ................................................................................................. 16

    H.    Status of the Cases........................................................................................................ 17

CONCLUSION.............................................................................................................. 17

# CASES

*Acton Corp. v. Borden*, 670 F.2d 377 (1st Cir. 1982) .................................................. 11

*Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987) ............................. 16

*Amato v. United States*, 450 F.3d 46 (1st Cir. 2006) .................................................... 6

*Baker v. Smith & Wesson, Inc.*, 40 F.4th 43 (1st Cir. 2022) ................................... 1, 13

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ................................................................... 2

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385
(D. Mass. 2022) ........................................................................................................ 11

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y.1985) .................................................... 6, 9

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962) ................................................... 16

*Conte v. Kingston NH Operations LLC*, 585 F. Supp. 3d 218 (N.D.N.Y. 2022) ........... 1

*Cook v. Lynn & William, Inc.*, No. 22-CV-10408-PBS, 2023 WL 3664526 (D. Mass. May 25,
2023) ............................................................................................................... 5, 6, 12

*Corbin v. Fed. Dep. Ins. Corp.*, 74 F.R.D. 147 (E.D.N.Y. 1977) ................................ 12

*Digital Equipment Corp., v. Currie Enterprises,* 142 F.R.D. 8 (D. Mass. 1991) ..................... 2, 10

*Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469 (7th Cir. 2004) ................................ 1

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D. Pa.
1980) ......................................................................................................................... 11

*Green v. Cosby*, 177 F. Supp. 3d 673 (D. Mass. 2016) .................................... 5, 6, 12, 13

*Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337 (N.D. Tex. July 15, 2002) ................ 17

*Hilda M. v. Brown*, No. 10-cv-02495-PAB-KMT, 2010 WL 5313755 (D. Colo. Dec. 20,
2010) ........................................................................................................................... 6

*In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819 (E.D. Pa. May 13,
2003) ......................................................................................................................... 14

*In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47 (S.D.N.Y. 1989) ................................ 16

*In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12 (S.D.N.Y. 1990) .............................. 9

*In the Matter of Film Recovery Sys., Inc.*, 804 F.2d 386 (7th Cir. 1986) ..................... 16

*Javier H. v. Garcia-Botello*, 218 F.R.D. 72 (W.D.N.Y. 2003) ................................. 6, 15

*Jones v. Conte*, No. C 045312S1, 2005 WL 1287017 (N.D. Cal. April 19, 2005) .................. 15

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) .............................................................. 5

*Larouche Campaign v. F.B.I.*, 106 F.R.D. 500 (D. Mass. 1985) .................................................. 11

*Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83 (2d Cir. 2012) ................................... 15

*McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256 (11th Cir. 2005) ................ 9

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc*., 385 F.3d 72 (1st Cir. 2004) ......... 5, 6, 13, 17

*Nat'l Ass'n of Gov't Employees v. Mulligan*, 849 F. Supp. 2d 167 (D. Mass. 2012) ....... 10, 12, 13

*Rosenthal v. Giuliani*, No. 98 Civ. 8408(SWK), 2001 WL 121944 (S.D.N.Y. Feb. 9, 2001) ..... 14

*Russell v. Chenevert*, 573 F. Supp. 3d 391 (D. Me. 2021) ........................................................ 8, 9

*Sea Salt, LLC v. Bellerose*, No. 2:18-cv-00413-JAW, 2020 WL 2475874 (D. Me. May 13, 2020) ....................................................................................................................................... 8, 9

*Sec. & Exch. Comm'n v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *7 (N.D. Cal. Dec. 22, 2010) ........................................................................................................ 2

*Sec. & Exch. Comm'n v. Beacon Hill Asset Mgmt. LLC.*, No. 02-CV-08855 (LAK), 2003 WL 554618, (S.D.N.Y. Feb. 27, 2003) ....................................................................................... 11

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) ......................... 13

*Sec. & Exch. Comm'n v. LaGuardia*, 435 F. Supp. 3d 616 (S.D.N.Y. 2020) ........................... 8, 11

*Sec. & Exch. Comm'n v. Liberty,* No. 2:18-CV-00139-JDL, 2019 WL 3752907 (D. Me. Aug. 8, 2019) ...................................................................................................................................... 9, 14

*Sec. & Exch. Comm'n v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ................................. 8

*Sec. & Exch. Comm'n v. O'Neill*, 98 F. Supp. 3d 219 (D. Mass. 2015) ....................................... 15

*Sec. & Exch. Comm'n v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) ........................ 13

*Sec. & Exch. Comm'n v. Shkreli*, Case No. 15-CV-07175 (KAM), 2016 WL 1122029 (E.D.N.Y. March 22, 2016) ....................................................................................................................... 8

*Sec. & Exch. Comm'n v. TelexFree, Inc.*, 52 F. Supp. 3d 349 (D. Mass. 2014) .................. passim

*Sec. & Exch. Comm'n v. Pirello*, No. 23CV8953KAMMMH, 2024 WL 456828, (E.D.N.Y. Feb. 5, 2024) ........................................................................................................................... 11

*United States ex rel. Lokosky v. Acclarent, Inc.,* 464 F. Supp. 3d 440 (D. Mass. 2020) .......... 2, 13

*United States v. Am. Radiator & Standard Sanitary Corp*., 388 F.2d 201 (3d Cir. 1967) ............. 6

*United States v. Article of Drug Consisting of 30 Individually Cartoned Jars, More or Less, Labeled in Part: "Ahead Hair Restorer for New Hair Growth"*, 43 F.R.D. 181 (D. Del. 1967) ........................................................................................................................................... 6

*United States v. Chin et al.* (21-cr-10256-IT) ......................................................................... 1, 17

*United States v. Kordel*, 397 U.S. 1 (1970) ................................................................ 5, 6

*Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) ............... 11, 12

*Zavatsky v. O'Brien*, 902 F. Supp. 2d 135 (D. Mass. 2012) ............................................ 12, 15, 17

## STATUTES

18 U.S.C. § 371 ................................................................................................................ 8

18 U.S.C. §1956(h) .......................................................................................................... 8

31 U.S.C. § 3729(a)(1) .................................................................................................... 19

31 U.S.C. § 3729(b)(1) ................................................................................................... 19

42 U.S.C. § 1320a – 7b(b)(2) ..................................................................................... 8, 19

## INTRODUCTION

The remaining claims in these actions are predicated on Relator-Plaintiffs' theory that Defendants retaliated against them for reporting certain alleged unlawful conduct to the federal government, which ultimately resulted in the government seeking an indictment in a pending criminal case in the District of Massachusetts.  *See United States v. Kingsley R. Chin, Aditya Humad, and Spinefrontier, Inc*. (21-cr-10256-IT).  To allege retaliation under 31 U.S.C. § 3730(h), a relator must prove that they engaged in protected activity as a result of a good faith belief that their employer was committing fraud against the government.  *See Baker v. Smith & Wesson, Inc.*, 40 F.4th 43, 48 (1st Cir. 2022) ("To satisfy the 'protected activity' requirement, an employee must show that he had both a subjective belief and an objectively reasonable belief that the conduct that he reported constituted a violation of [the Sarbanes Oxley Act]"); *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469 (7th Cir. 2004); *Conte v. Kingston NH Operations LLC*, 585 F. Supp. 3d 218, 243 (N.D.N.Y. 2022) ("Specifically, to prove that [s]he engaged in a 'protected activity,' an FCA plaintiff must show that '(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'") (internal quotation omitted).  Relator-Plaintiffs' employment retaliation claims are, therefore, inextricably intertwined with their allegations of Defendants' alleged illegal conduct, which significantly overlap with the conduct the government alleges in the criminal matter.

As a result, any defense presented by Defendants in this action, necessarily, would risk waiving their Fifth Amendment privilege in connection with the pending criminal prosecution before Judge Indira Talwani.  On the other hand, if the Defendants preserve their Fifth Amendment rights by declining to answer the allegations against them or present evidence on their own behalf,

they would be unable to mount a defense to these actions and the adverse inference that would arise from their silence would be equivalent to forfeiting their day in court.[1]

Therefore, Defendants Spinefrontier, Inc. ("Spinefrontier"), Impartial Medical Experts, LLC ("IME"), KIC Management Group, Inc., KICVentures, LLC, Axiomed, LLC, LESSurgeon Institute Florida, LLC, Kingsley Chin, M.D. ("Chin"), and Aditya Humad ("Humad") (collectively, "Defendants") move to stay the civil actions involving Relator-Plaintiffs' employment claims pending the resolution of the aforementioned criminal case.  Relator-Plaintiffs claim retaliatory dismissal pursuant to 31 U.S.C. § 3730(h) of the False Claims Act.  A stay is necessary to preserve Chin and Humad's privilege against self-incrimination and will not prejudice Realtor-Plaintiffs as their employment claims remain intact.

## FACTUAL BACKGROUND

Relator-Plaintiffs brought these *qui tam* cases in 2015, alleging that Defendants engaged in an illegal kickback scheme that incentivized and, in effect, bribed physicians to use Spinefrontier medical devices by providing surgeons consulting agreements through a sham consulting entity, Independent Consulting Experts (IME), investment opportunities in Defendants' businesses, and other monetary benefits.  Plaintiffs further claimed that Defendants offered remuneration to physicians through IME to use Defendants' medical devices when performing spine-related surgical procedures.  On March 5, 2020, the government intervened in these actions

---

[1] *See Digital Equipment Corp., v. Currie Enterprises,* 142 F.R.D. 8, 13 (D. Mass. 1991) ("In a civil case, the finder of fact is not prohibited from making an adverse inference from a party's assertion of the fifth amendment privilege."); *Sec. & Exch. Comm'n v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *7 (N.D. Cal. Dec. 22, 2010) ("If the civil case proceeds, he will be forced to choose between preserving his privilege against self-incrimination, thereby subjecting himself to a one-sided discovery process and adverse inferences drawn from his invocation of the Fifth Amendment, and waiving the privilege in order to mount a vigorous defense in the civil case."); *United States ex rel. Lokosky v. Acclarent, Inc.,* 464 F. Supp. 3d 440, 443 (D. Mass. 2020) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("When a witness in a civil matter asserts the Fifth Amendment privilege against self-incrimination in response to questioning, the court may allow an adverse inference to be drawn from the answer -- that is, an inference that if the witness had answered, the answer would have been unfavorable to the witness.").

by filing a complaint against certain Defendants and the Relator-Plaintiffs' complaints were unsealed by this Court.

Collectively, the complaints alleged violations of the False Claims Act (FCA), the Anti-Kickback Statute (AKS), the Stark Law, and the Physician Payment Sunshine Act (PPSA) among other claims. Relator-Plaintiffs' complaints also alleged retaliation under federal and state law and wrongful termination under common law. On January 16, 2024, the parties filed Joint Stipulations of Partial Dismissal (ECF No. 133 and 160) dismissing all claims other than, *inter alia*, Plaintiff-Relators' retaliation claims pursuant to 31 U.S.C. § 3730(h).

On August 30, 2021, the government obtained a criminal indictment against Defendants Spinefrontier, Kingsley Chin, and Aditya Humad charging them with Conspiracy to Violate the AKS, pursuant to 18 U.S.C. § 371, multiple substantive violations of the AKS, pursuant to 42 U.S.C. § 1320a – 7b(b)(2), and Conspiracy to Commit Money Laundering, pursuant to 18 U.S.C. §1956(h). The indictment alleges conduct that substantially mirrors conduct alleged in the government's and Relator-Plaintiff's complaints in the instant civil actions. A copy of Spinefrontier, Chin and Humad's Indictment is attached hereto as **Exhibit A**.

The similarities between conduct alleged by Plaintiff-Relators in their complaints and the conduct alleged in the Indictment are striking. For example, the government has alleged in its indictment that Spinefrontier, Chin, and Humad conspired "to pay bribes [to physicians] in connection with the use of Spinefrontier products" for medical services payable by Medicare/Medicaid with the intention "to enrich themselves." Ex. A at ¶¶ 29 -30. Further, that defendants paid millions in bribes to surgeons under "a sham consulting program" [IME] that paid surgeons $250 or $1000/hour for "consulting services" that were, in fact, never performed. Ex. A

at ¶¶ 29 -30. Moreover, surgeons accepted "sham consulting payments as a bribe and reward" for related purchases of Spinefrontier products for their surgical practices.  Ex. A at ¶¶ 29 -30.

Similarly, Relator-Plaintiff John Miller alleged in his complaint that he was retaliated against because he discovered that "defendants were funneling the consulting agreements [and payments] through IME . . . to shield surgeons hired from reporting their consulting agreement [and payments]" as required under the Physician Payments Sunshine Act [PPSA]." *Miller Complaint* at ¶ 89. Miller claims to have twice reported these concerns to Spinefrontier's counsel, never received a response, and was ignored.  He further alleged that despite coming forward to company counsel and reporting about the company's illegal consulting practices, he was terminated "in retaliation for his whistleblowing activities." *Id.* at ¶ 92.

Likewise, Relator-Plaintiff John Birchall alleged in his complaint that he was retaliated against because he reported his concerns to AxioMed's CEO and, later, Spinefrontier's VP of Sales, that Spinefrontier was paying surgeons "illegal remuneration" in the form of consulting fees for using Spinefrontier devices in surgeries.  *Birchall Complaint* at ¶¶ 65 – 67.  After being told that the payments complied with the law, Birchall allegedly discovered that significant consulting fees were paid to surgeons by IME out of KIC Ventures bank accounts and that none of the payments IME made to surgeons were properly reported. *Id.* at ¶¶ 69 – 72.  After Birchall reported his concerns to the Federal Bureau of Investigation (FBI), he was suspended in June 2015 based on complaints of "performance in the workplace." *Id. at* ¶¶ 91 - 93; 96 – 98.

In sum, the Miller and Birchall complaints and the Indictment set forth the same allegations: that Defendants were engaged in a fraudulent scheme that rewarded surgeons with cash kickbacks disguised as "consulting payments" from IME in return for using Spinefrontier products in their surgeries.

**ARGUMENT**

A stay pending resolution of the criminal case and related indictment of Chin and Humad is necessary to protect their rights against self-incrimination under the Fifth Amendment, and to enable Chin and Humad to defend themselves in the instant action by foregoing producing documents and testifying in depositions.  The Supreme Court has long recognized that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  With respect to parallel civil and criminal proceedings, the Supreme Court has explained:

> [f]ederal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution . . . ; sometimes at the request of the defense . . . .

*United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citations omitted); *see also Cook v. Lynn & William, Inc.*, No. 22-CV-10408-PBS, 2023 WL 3664526, at *2 (D. Mass. May 25, 2023) ("A stay is appropriate 'when the interests of justice counsel in favor of such a course'") (quoting *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004)); *Green v. Cosby*, 177 F. Supp. 3d 673, 678 (D. Mass. 2016) ("a district court's discretionary power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when the interests of justice counsel in favor of such a course'") (citing *Microfinancial*, 385 F.3d at 78)).  A stay is particularly appropriate when, as here, if the civil proceeding moves forward, "the defendant will be faced with the difficult choice between asserting [his] right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the

criminal case." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003).[2]  Under such circumstances, staying the civil proceeding can promote the interests of justice and make efficient use of judicial resources. *See Sec. & Exch. Comm'n v. TelexFree, Inc.*, 52 F. Supp. 3d 349, 352–53 (D. Mass. 2014).

Apropos to this case where the principal Defendants are under indictment, courts in this district look to certain factors in deciding whether to grant a stay in a civil case pending resolution of a criminal proceeding: (1) the interest of the civil plaintiff in proceeding expeditiously; (2) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (3) the convenience of both the civil and criminal courts; (4) the interests of third parties; (5) the public interest; (6) the good faith of the litigants; and (7) the status of the cases. *See Microfinancial*, 385 F.3d 72, 78; *Cook*, 2023 WL 3664526, at *2 (citing the *Microfinancial* factors); and *Green*, 177 F. Supp. 3d at 678 (same).  Additionally, courts consider "the extent to which the issues in the criminal case overlap with those presented in the civil case." *TelexFree*,

---

[2] Although Defendants Spinefrontier, Inc., Impartial Medical Experts, LLC, KIC Management Group, Inc., KIC Ventures, LLC, Axiomed, LLC, LESSurgeon Institute Florida, LLC, (the "Corporate Defendants") do not have a right against self-incrimination because they are not natural persons, *see Amato v. United States*, 450 F.3d 46, 49 (1st Cir. 2006), as a practical matter, the Corporate Defendants are unable to provide testimony as long as Defendant Chin faces criminal jeopardy.  *See Kordel*, 397 U.S. at 9 (assuming, without deciding, that stay of civil action is the remedy when no individual can answer interrogatories directed at corporation without risking self-incrimination); *see also Hilda M. v. Brown*, No. 10-cv-02495-PAB-KMT, 2010 WL 5313755, at *4-5 (D. Colo. Dec. 20, 2010) (staying action where owner and principal employee of corporate defendant risked self-incrimination if discovery were not stayed against corporation).  As acknowledged in the civil complaints, Chin is the principal owner and corporate officer of the Corporate Defendants.  *See, e.g.*, Dkt. No. 67 at ¶ 18.  Only Chin and, to some degree, Defendant Humad, could testify on behalf of certain Corporate Defendants. Moreover, the government has already indicted Chin and Humad. As a result, the Corporate Defendants would be unable to mount a defense without Chin and Humad's testimony. *See United States v. Am. Radiator & Standard Sanitary Corp.*, 388 F.2d 201, 204 (3d Cir. 1967) (stating that the individual officers of the corporation would have the constitutional privilege of self-incrimination, unlike the corporate defendants); *United States v. Article of Drug Consisting of 30 Individually Cartoned Jars, More or Less, Labeled in Part: "Ahead Hair Restorer for New Hair Growth"*, 43 F.R.D. 181, 187 (D. Del. 1967) (same); *Brock v. Tolkow*, 109 F.R.D. 116, 121 (E.D.N.Y. 1985) (same) ("While a stay . . may cause some inconvenience and delay to the [government], 'protection of defendant[s'] constitutional rights against self-incrimination is the more important consideration.'").

52 F. Supp. 3d at 352. Each of these factors and the status of the instant case and pending criminal proceedings supports a stay of this litigation.

    **A.**    **Relator-Plaintiffs' Retaliation Claims Are Intertwined With The Substantive Allegations Under The False Claims Act and Anti-Kickback Statute.**

The Miller and Birchall complaints and the Indictment assert the same allegations that Defendants were engaged in a fraudulent scheme which rewarded surgeons with cash kickbacks disguised as "consulting payments" from IME in return for using Spinefrontier products in their surgeries. Relator-Plaintiffs allege, further, that because they raised concerns about Defendants' illegal conduct with company executives they were retaliated against and fired.

Notwithstanding dismissal of the substantive false claims allegations in the Relator-Plaintiff and government intervenor complaints – leaving only the retaliatory dismissal and wrongful termination counts – Defendants will, inevitably, need to refer to and, otherwise, be asked to address, the substantive facts at issue in the criminal case and their alleged actions, statements, and behavior to defend themselves against the Relator-Plaintiff's retaliation claims.

During discovery, for example, the Relator-Plaintiffs will seek documents, records, and email communications from defendants about the formation and operation of IME, interactions with IME's consulting surgeons, IME payments to surgeons, internal, non-privileged communications about IME and Spinefrontier's business operations, and documents discussing Relator-Plaintiffs, their complaints, and their subsequent dismissals from the company. At deposition, counsel will explore with defendants all the aforementioned issues and seek answers about IME, its founding, its operation and financing, physician payments and consulting practices, physician purchases of Spinefrontier products, as well as Relator-Plaintiff voiced complaints to the company and their dismissals. In other words, the same issues are at the heart of the

government's criminal case against Chin and Humad and the basis for the Relator-Plaintiffs' claims of retaliatory dismissal in this case.[3]

Faced with this inquiry in the civil case, Chin and Humad would assert their Fifth Amendment rights against self-incrimination to avoid prejudice to their criminal case yet also suffer an adverse inference instruction to the jury if the civil case goes forward is tried in the future. Neither option is tenable for Chin and Humad and, as such, warrants entry of a stay of proceedings by the Court until the criminal case is resolved.

**B.    The Criminal Investigation Is Based On The Same Facts And Issues As This Litigation**

The "most important factor" for the Court to consider is the extent to which the facts and legal issues in the instant proceedings overlap with the pending criminal action. *TelexFree*, 52 F. Supp. 3d at 352 (quoting *Sec. & Exch. Comm'n v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008)). Where, as here, the substance of the criminal and civil action is "nearly identical," this factor counsels heavily in favor of a stay. *See id.; Russell v. Chenevert*, 573 F. Supp. 3d 391, 397 (D. Me. 2021) ("Another factor a court should consider, which has been described as '[t]he most important factor,' is 'the degree to which the civil issues overlap with the criminal issues.'") (quoting *Sea Salt, LLC v. Bellerose*, No. 2:18-cv-00413-JAW, 2020 WL 2475874, at *2 (D. Me. May 13, 2020)); *Sec. & Exch. Comm'n v. LaGuardia*, 435 F. Supp. 3d 616, 621 (S.D.N.Y. 2020) ("The overlap of the issues in the criminal and civil cases" is "a particularly significant factor") (quoting *Sec. & Exch. Comm'n v. Shkreli*, Case No. 15-CV-07175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. March 22, 2016)).

---

[3]  The fact that the Relator-Plaintiffs are likely to testify as government witnesses at Defendants' criminal trial underscores the fact that their allegations of retaliatory dismissal and wrongful termination are inextricably intertwined in the FCA and AKS allegations to be litigated at the criminal trial beginning in September 2024. *See Telexfree*, 52 F. Supp. 3d at 352 (noting that the most important factor when considering a motion to stay is the overlap of issues, and granting the motion when the substance of the two parallel actions at issue in the case were nearly identical and the evidence – including witness testimony – would be the same for both cases).

Defendants accused of violating the FCA, as in this case, face both civil and criminal exposure for the same conduct. *See McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1257–58 (11th Cir. 2005) (noting stay of civil FCA case granted due to pending and related criminal case); *Russell*, 573 F. Supp. 3d at 403-04 ("'[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . [because] the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations'") (quoting *Sec. & Exch. Comm'n v. Liberty,* No. 2:18-CV-00139-JDL, 2019 WL 3752907, at *6 (D. Me. Aug. 8, 2019)). As already discussed, the civil action and the criminal indictment involve the same subject matter, arise out of the same alleged conduct, and allege the same FCA allegations: Spinefrontier, Chin and Humad's purported illegal kickback scheme used to induce doctors to use their medical products and seek reimbursement under the FCA for those products from government healthcare programs. The government's criminal indictment is based on that same conduct. "A pre-indictment stay is particularly appropriate where both the civil and criminal charges arise from the same remedial statute such that the criminal [case] is likely to vindicate the same public interest as would the civil suit." *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 14 (S.D.N.Y. 1990) (citing *Brock v. Tolkow,* 109 F.R.D. 116 (E.D.N.Y. 1985)); *see also Russell*, 573 F. Supp. 3d at 399 ("The 'strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter'") (quoting *Bellerose*, 2020 WL 2475874, at *2).

As referenced above, the similarities between conduct alleged by Relators in their complaints and the conduct alleged in the Indictment are obvious. While the Indictment alleges Spinefrontier, Chin and Humad, through IME, violated the FCA and AKS by conspiring to bribe physicians by paying sham "consulting fees" to use Spinefrontier products reimbursable to

Defendants by Medicare/Medicaid, the Relator-Plaintiff complaints allege "retaliatory dismissal" by Defendants in the wake of complaints they made to management that Defendants were operating a sham consulting entity (IME) to pay doctors bribes (disguised as consulting fees) in violation of the PPSA in return for using Spinefrontier products in their surgeries. In other words, evidence adduced by the government at trial to prove an FCA violation or by the Relator-Plaintiffs at trial to prove a retaliatory dismissal/wrongful termination claim would be the same evidence based on the same documentation and same witness testimony.

### C.   The Prejudice To Chin and Humad Outweighs The Interest To Plaintiffs And Weighs In Favor Of A Stay

Although the Relator-Plaintiffs have an interest in the expeditious resolution of the remaining retaliation claims in this civil action, any purported prejudice to Relator-Plaintiffs is far outweighed by the harm Chin and Humad will suffer if they are forced to defend against these claims at the same time the criminal case is being litigated.[4]  First, Plaintiffs will not be unduly prejudiced by a stay of this proceeding.  Spinefrontier, Chin and Humad's convictions in the criminal proceeding would, likely, narrow the issues in this action and Defendants would be estopped from relitigating those specific issues all over again.  *TelexFree*, 52 F. Supp. 3d at 353 ("A stay would also conserve judicial resources and narrow the issues to be resolved in the event that criminal convictions are obtained. Under such a scenario, defendants would be estopped from re-litigating issues decided against them"); *Nat'l Ass'n of Gov't Employees v. Mulligan*, 849 F. Supp. 2d 167, 173 (D. Mass. 2012). Second, Plaintiffs would receive "free" discovery as a result of testimony given during the pending criminal proceeding.  *See Currie Enterprises*, 142 F.R.D. at 13 ("The defendants argue that discovery in this case may allow the prosecution to obtain

---

[4] The government Plaintiff and Defendants negotiated a settlement of the FCA claims contained in this suit and that resulted in a partial dismissal of said claims by the government. The Relator-Plaintiffs will recover financially from that settlement even while these actions are stayed.

information outside the scope of discovery in the criminal proceedings."); *Larouche Campaign v. F.B.I.*, 106 F.R.D. 500, 501 (D. Mass. 1985) ("[T]he broad rules of civil discovery cannot be used to circumvent the more restrictive rules of criminal discovery."); *LaGuardia*, 435 F. Supp. 3d at 622 ("The Government and the public have an interest in ensuring that civil discovery is not used 'to circumvent limitations on discovery in criminal cases[.]'") (quoting *Sec. & Exch. Comm'n v. Beacon Hill Asset Mgmt. LLC.*, No. 02-CV-08855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003)).

Staying this matter would "obviate much of the expenditure of time and money which plaintiffs [and Defendants] would otherwise be compelled to invest in the civil suit, since determination of the criminal case will streamline or eliminate issues . . . in the civil suit." *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980); *see also Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 392 (D. Mass. 2022) ("When a common issue exists across two 'overlapping' suits, courts may stay one case to avoid 'duplication of effort and potentially inconsistent judgments'") (quoting *Acton Corp. v. Borden*, 670 F.2d 377, 382 (1st Cir. 1982) (Breyer, J.)); *TelexFree,*, 52 F. Supp. 3d at 353 ("A stay would also conserve judicial resources and narrow the issues to be resolved in the event that criminal convictions are obtained."); *Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 41 (S.D.N.Y. 1993) (noting that a stay would effectively postpone the civil trial, which, in turn, would result in less litigation over major Fifth Amendment issues); *Sec. & Exch. Comm'n v. Pirello*, No. 23CV8953KAMMMH, 2024 WL 456828, at *8 (E.D.N.Y. Feb. 5, 2024) ("[The outcome of the Criminal Case may help to "narrow the issues" and "prevent . . . unnecessarily duplicative work" in the Civil Case.").

By contrast, any purported prejudice to Plaintiffs is outweighed by the harm Chin and Humad will suffer if forced to defend against this action in parallel with the criminal investigation. *See Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 148 (D. Mass. 2012) (granting partial stay where interest in expeditious resolution of case was outweighed by defendant's "much greater liberty interest at stake"); *see also Cook.*, 2023 WL 3664526, at *2 ("The chief concern is the predicament the criminal defendant faces in either asserting his Fifth Amendment right in the civil action, thereby risking a verdict against him, or waiving his right and potentially disclosing evidence that can be used to convict him in the criminal action"); *Green*, 177 F. Supp. 3d at 681-82 (staying discovery addressed to defendant during pendency of criminal proceeding in part because defendant's right against self-incrimination is the "more important consideration" than plaintiff's interest in avoiding delay); *United Tech.*, 906 F. Supp. at 29 ("[P]rotection of defendant's constitutional rights against self[-]incrimination is the more important consideration.") (quoting *Corbin v. Fed. Dep. Ins. Corp.,* 74 F.R.D. 147, 149-150 (E.D.N.Y. 1977)); *Volmar Distributors*, *Inc.*, 152 F.R.D. at 40 ("The Court appreciates that this stay will result in inconvenience and delay to plaintiffs. But under settled authority the Fifth Amendment is the more important consideration.").

If the Court allows this action to proceed during the pendency of the criminal proceedings against Chin and Humad, they will be faced with an "untenable Hobson's choice." [5] *Id*. at 28 (quotation marks omitted); *see also Mulligan*, 849 F. Supp. 2d at 173 (granting stay of civil case in part to avoid presenting defendants with a "conundrum").  On the one hand, Chin and Humad could mount a defense in this action and expose themselves to the risk that their testimony will be

---

[5]  The Merriam-Webster Dictionary defines a *Hobson's Choice* as "the necessity of accepting one of two or more equally objectionable alternatives."

used against them in the criminal matter.[6]  Alternatively, Chin and Humad could assert their rights against self-incrimination under the Fifth Amendment.  However, by doing so, Chin and Humad will risk crippling their defense in this action because the Relator-Plaintiffs could obtain a reasonable adverse inference instruction from their silence and refusal to testify.  *See Green*, 177 F. Supp. 3d at 679; *Digital Equipment Corp.,* 142 F.R.D. at 13; *see also Lokosky*, 464 F. Supp. 3d at 443 (D. Mass. 2020) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("When a witness in a civil matter asserts the Fifth Amendment privilege against self-incrimination in response to questioning, the court may allow an adverse inference to be drawn from the answer -- that is, an inference that if the witness had answered, the answer would have been unfavorable to the witness.").  Based on the foregoing, Chin and Humad are simply not able to provide testimony freely or mount a meaningful defense in this action without seriously jeopardizing the pending criminal case.[7]

### D.    A Stay Would Promote the Convenience of this Court and Would Have No Impact on the Criminal Court

A complete stay of these cases would be the most efficient approach to these parallel matters and would reduce the strain on this Court's resources.  *See Mulligan*, 849 F. Supp. 2d at 173 (noting a stay would conserve judicial resources and narrow issues to be resolved in civil matter); *Rosenthal v. Giuliani*, No. 98 Civ. 8408(SWK), 2001 WL 121944, *2 (S.D.N.Y. Feb. 9,

---

[6] The Defendants would also risk disclosure of their defense in advance of the criminal trial.  *See Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980); *Microfinancial, Inc.*, 385 F.3d at 79 (citing Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 205–06 (1989)) (explaining that a defendant could waive their Fifth Amendment rights in parallel criminal proceedings if he chooses to testify in parallel civil proceedings).

[7] The Defendants will also suffer prejudice if this action is not stayed because they do not have the financial resources to mount an adequate defense to both the civil and criminal fronts at the same time.  *See TelexFree*, 52 F. Supp. 3d at 353 (noting stay will allow defendants to avoid substantial litigation costs in light of concern about mounting litigation expenses).  *Liberty*, 2019 WL 3752907, at *3 (same); *see also Sec. & Exch. Comm'n v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) (stating that defendants "confront the prospect of expensive dual litigation" when faced with both civil and criminal enforcement for the same violation).

2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties."). Additionally, a conviction would, likely, promote settlement of this litigation.

For example, because Spinefrontier, Chin and Humad are criminally charged with violations of the AKS, the government must prove that they knowingly and willfully offered or paid remuneration to any person to induce or reward the generation of business involving an item or service payable by Federal health care programs. *See* 42 U.S.C. § 1320(a)-7b(b)(2)(A). If the government proves such charges, Defendants' estoppel will make easier Plaintiff's proof of their claims under 31 U.S.C. § 3729(a)(1), which requires a showing the Defendants acted knowingly, or in deliberate ignorance or reckless disregard for the truth with respect to claims presented to the government for payment. *See* 31 U.S.C. § 3729(b)(1).

A stay will also avoid the possibility of inconsistent outcomes. *See Liberty*, 2019 WL 3752907, at *3 (finding a stay to be appropriate and considering that dual litigation "creates a risk of inconsistent outcomes because the rulings in [the] civil proceeding will not be binding in the criminal proceeding"). If the Court stays this action and Spinefrontier, Chin and Humad are convicted, they will be estopped from denying the essential elements of the issues decided in the criminal case. There would be no risk that this Court would render a decision contrary to any criminal verdict because there would be no dispute concerning any of the issues decided in the criminal case. Conversely, if this action is allowed to proceed without a stay, there is a risk of inconsistent outcomes because Chin and Humad cannot fully defend themselves in this matter while criminal charges are pending. *See In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *7 (E.D. Pa. May 13, 2003) (noting proceedings against defendants on two fronts risks "inconsistent litigation" and "unnecessary duplication of issue and inconsistent relief."); *see*

*also Sec. & Exch. Comm'n v. O'Neill*, 98 F. Supp. 3d 219, 222 (D. Mass. 2015) (stating the Court would be inclined to issue a stay if a party had to defend themselves in two parallel matters, and such dual litigation "compromised a defendant's ability to defend himself in either proceeding").

Finally, staying discovery at this stage would also lessen the burden on this Court to referee discovery disputes.  Given the status of the criminal investigation, it is likely that the parties would then have multiple disputes concerning the assertion of the Fifth Amendment. *Jones v. Conte*, No. C 045312S1, 2005 WL 1287017, at *2 (N.D. Cal. April 19, 2005) (granting stay because, in part, "[s]taying the case makes efficient use of judicial resources by 'insuring that... subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination'") (quoting *Javier H.*, 218 F.R.D. at 75); *see Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 104 (2d Cir. 2012) (noting that the court should consider its own interest in judicial economy when determining whether a stay is appropriate); *TelexFree*, 52 F. Supp. 3d at 352 ("Courts ultimately possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention.") (internal citations omitted).

### E.    Interest of Third Parties

Individuals other than the moving Defendants also have important rights with respect to this litigation.  Other healthcare providers identified in the complaints, for instance, may also be under criminal investigation for participation in the alleged kickback and FCA scheme.  Those individuals are likely to be witnesses in this action and may, by virtue of the pending criminal investigation, invoke their own Fifth Amendment privilege if subpoenaed to testify in this action.

### F.    The Public Interest is Stronger in the Criminal Case

There is no reason to believe the public interest would be adversely affected by a stay here of Relator-Plaintiffs' retaliation claims.  On the contrary, the public interest will be vindicated in the criminal matter.  *See Zavatsky*, 902 F. Supp. 2d at 149; *In re Ivan F. Boesky Sec. Litig.*, 128

F.R.D. 47, 49 (S.D.N.Y. 1989) (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)) ("[P]ublic interest in the criminal case is entitled to precedence over the civil litigant[.]").  The public also has an interest in ensuring that federal resources are spent efficiently.  And although the public has an interest in the timely resolution of both civil and criminal matters, the public's interest in the criminal matter is stronger.  *TelexFree*, 52 F. Supp. 3d at 353 ("[T]he public interest in unimpeded criminal law enforcement outweighs the civil interests here."); *In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. at 49.

### G.    Good Faith of Litigants

There is no suggestion that the Defendants are seeking a stay in bad faith.  Further, the Defendants have acted in good faith throughout the life of this case as evidence by Defendants' successful efforts to resolve the FCA and related claims with the government.   Defendants have not filed frivolous motions or employed delay tactics to gain a tactical advantage.  To the contrary, through this motion, the Defendants are ***foregoing*** a tactical advantage in order to protect their constitutional right against self-incrimination.  *See Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1203 (Fed. Cir. 1987) (the "broad scope of civil discovery may present . . . an irresistible temptation to use that discovery to one's advantage in the criminal case."); *Campbell*, 307 F.2d at 487 (concluding that a "litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit"); *In the Matter of Film Recovery Sys., Inc.*, 804 F.2d 386, 389 (7th Cir. 1986) (stating that a collateral litigation should not be permitted to exploit another's discovery in the sense of instituting the collateral litigation simply as a device to obtain access to the sealed information.").

## H.      Status of the Cases

The status of the cases favors a stay. The criminal investigation has resulted in the indictment of the principal defendants in the instant action on FCA, AKS, and related criminal statutory violations. *See* **Exhibit A**. The Speedy Trial Act suggests that the criminal case is, most likely, to conclude prior to the resolution of this action should it go forward. *See Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337, at *3 (N.D. Tex. July 15, 2002) (noting that the "prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations"). In fact, Judge Talwani has scheduled a jury trial in the criminal matter to begin on September 9, 2024. *See United States v. Chin et al.* (21-cr-10256-IT) (Dkt. No. 154).

In sum, a stay of these proceedings represents a more efficient manner of managing this complex litigation. Additionally, Defendants make this motion before they have answered the Relator-Plaintiffs' complaint or the parties have engaged in any discovery whatsoever. *Green*, 177 F. Supp. 3d at 681 (noting that the case was still in the "relatively early stages" when considering whether a stay was appropriate); *Zavatsky,* 902 F. Supp. 2d at 148 (considering the status of the case and noting that the "case is not on the brink of trial and discovery has not yet begun"); *cf Microfinancial, Inc.,* 385 F.R.D. at 79 (denying motion to stay made "on the brink of trial" and after extensive discovery exchanged).

## CONCLUSION

For the foregoing reasons, Defendants Spinefrontier, Inc., Impartial Medical Experts, LLC, KIC Management Group, Inc., KIC Ventures, LLC, Axiomed, LLC, LESSurgeon Institute Florida, LLC, Kingsley Chin, M.D., and Aditya Humad respectfully request that the Court stay this action pending the resolution of the criminal investigation against them.

Dated:  March 8, 2024

Respectfully submitted,

**ADITYA HUMAD**

By his attorney,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO # 669810)
Robinson & Cole LLP
One Boston Place, 25th Floor
Boston, Massachusetts 02108
Tel: 617-557-5915
Fax: 617-557-5999
sorkand@rc.com

**SPINEFRONTIER, INC.,
IMPARTIAL MEDICAL EXPERTS,
LLC, KIC MANAGEMENT GROUP,
INC., KICVENTURES, LLC,
AXIOMED, LLC, LESSURGEON
INSTITUTE FLORIDA, LLC,  and
KINGSLEY CHIN, M.D**

By their attorney,

*/s/ Robert L. Peabody*
Robert L. Peabody (BBO # 551936)
Husch Blackwell LLP
One Beacon Street, Ste. 1320
Boston, Massachusetts 02108
Tel: 617-733-1376
robert.peabody@huschbackwell.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of this document was filed through the Electronic Case Filing system and will be served upon the attorney of record for each party registered to receive electronic service this 8th day of March 2024.

*/s/ Seth B. Orkand*
Seth B. Orkand