# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel*. CHARLES BIRCHALL, JR. *et al*.,<br><br>               Plaintiffs,<br><br>    v.<br><br>SPINEFRONTIER, INC., IMPARTIAL MEDICAL EXPERT LLC, KIC MANAGEMENT GROUP, INC., KICVENTURES, LLC, KINGSLEY CHIN, M.D., ADITYA HUMAD, and VANESSA DUDLEY,<br><br>               Defendants. | **15-cv-12877-LTS**<br>**15-cv-12908-LTS** |

## UNITED STATES' OPPOSITION TO RELATORS' JOINT MOTION FOR A SHARE OF THE GOVERNMENT'S SETTLEMENTS WITH NON-DEFENDANTS

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

FALSE CLAIMS ACT ....................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      Relators Are Not Entitled to a Share of the Settlements with Settling Surgeons Under
        Section 3730(d)(1) ................................................................................................... 7

        A.      The Legal Standard for a Relator's Share under the FCA ...................................... 7

        B.      Relators Did Not Meet the Prerequisites for a Share of the Settling Surgeons'
                Settlements....................................................................................................... 9

        C.      Out-of-Circuit Cases Do Not Warrant a Different Result ................................... 12

                1.      Under First Circuit Precedent, Share Eligibility Is Based on a Claim-by-
                        Claim Analysis, Not Equitable or Purpose-Based Considerations ........... 12

                2.      Relators Cannot Manufacture Share Eligibility by Naming the Settling
                        Surgeons in an Amended Complaint Years After the Settlements .......... 13

                3.      Relators Cited a Vacated Panel Decision in *Rille*, Not the En Banc
                        Holding Adopted by the First Circuit ...................................................... 14

II.     Relators Are Not Entitled to a Share of the Settling Surgeons' Settlements as an Alternate
        Remedy Under Section 3730(c)(5) .......................................................................... 14

        A.      Relators Did Not Bring a Claim Against Any of the Settling Surgeons............... 15

        B.      An FCA Settlement Is Not an Alternate Remedy ................................................. 17

III.    Relators' Argument, If Adopted, Would Cause Significant Uncertainty, Unintended
        Consequences, and Inefficiencies .......................................................................... 18

IV.     The Court Should Deny Relators' Request for Discovery.............................................. 20

CONCLUSION................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................10

*Est. of Cunningham v. McGuire,*
    140 S. Ct. 851 (2020).................................................................................................7

*Haley v. City of Bos.,*
    657 F.3d 39 (1st Cir. 2011).......................................................................................20

*In re Natural Gas Royalties Qui Tam Litig.,*
    566 F.3d 956 (10th Cir. 2009) ..................................................................................10

*United States ex rel. Babalola v. Sharma,*
    746 F.3d 157 (5th Cir. 2014) ....................................................................................16

*United States v. Bisig,*
    No. 100-cv-335, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005) ..........................13, 14

*United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.,*
    606 F.3d 361 (7th Cir. 2010) ....................................................................................18

*United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.,*
    495 F.3d 103 (3d Cir. 2007).......................................................................................11

*United States ex rel. Kennedy v. Novo A/S,*
    5 F.4th 47 (D.C. Cir. 2021)....................................................................15, 16, 17, 18

*United States v. Kurlander,*
    24 F. Supp. 3d 417 (D.N.J. 2014) .............................................................................13

*United States v. L-3 Commc'ns EOTech, Inc.,*
    921 F.3d 11 (2d Cir. 2019)........................................................................................16

*United States ex rel. Lovell v. AthenaHealth, Inc.,*
    56 F.4th 152 (1st Cir. 2022).............................................................................. *passim*

*United States v. Lustman,*
    No. 05-cr-40082, 2006 WL 1207145 (S.D. Ill. May 4, 2006) ...................................13

*United States ex rel. Merena v. SmithKline Beecham Corp.,*
    205 F.3d 97 (3d Cir. 2000).........................................................................................8

*United States v. Millenium Laboratories, Inc.*,
  923 F.3d 240 (1st Cir. 2019) .............................................................................. *passim*

*United States v. Najjar*,
  120 F. Supp. 3d 1322 (M.D. Fla. 2015) ...................................................................12, 13

*United States ex rel. Rille v. Pricewaterhouse Coopers, LLP*,
  803 F.3d 368 (8th Cir. 2015) .............................................................................. *passim*

*United States ex rel. Rille v. Pricewaterhouse Coopers, LLP*,
  No. 4:04-CV-988, 2017 WL 11683682 (E.D. Ark. Feb. 8, 2017) ...............................14

*United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*,
  750 F.3d 111 (1st Cir. 2014) ...................................................................................11, 18

## STATUTES

31 U.S.C. § 3729 ..................................................................................................... *passim*

31 U.S.C. § 3730 ..................................................................................................... *passim*

31 U.S.C. § 3731 ...........................................................................................................17

42 U.S.C. § 1320a-7b ...................................................................................................13

## RULES

Fed. R. Civ. P. 4 ...........................................................................................................12

Fed. R. Civ. P. 8 .....................................................................................................10, 20

Fed. R. Civ. P. 9 ...........................................................................................................20

Fed. R. Civ. P. 10 .........................................................................................................10

Fed. R. Civ. P. 11 .........................................................................................................20

The United States of America respectfully asks the Court to deny the joint motion by Relator Charles Birchall, Jr. in Case No. 15-cv-12877 ("ECF") and Relators John Miller and Walter Bennett in Case No. 15-cv-12908 ("JM ECF") for a declaration of entitlement to a relator award from the government's 2020 settlements with six surgeons whom Relators had not timely named as defendants:  Drs. Paul DeGenova, Joseph Shehadi, Agha Khan, Michael Murray, John Atwater, and Jeffrey Carlson (collectively, "Settling Surgeons").  (Relators' Mot., ECF 188).

## PRELIMINARY STATEMENT

The qui tam provisions of the False Claims Act ("FCA") allow relators to file a claim on behalf of the United States against a defendant in federal court, and if the claim is settled or ultimately resolved, to receive a share or award of the proceeds recovered from that defendant. The FCA's statutory text and this Circuit's case law establishes that a relator's eligibility for a share of the proceeds depends on the relator bringing a claim against the defendant.  Indeed, the United States has intervened in Relators' qui tam actions and reached a settlement agreement with the named defendants, and the parties acknowledge that some combination of Relators are entitled to a share of those recoveries, consistent with the FCA.  (*See, e.g.*, ECF 178; JM ECF 133).

Relators now seek a share of the United States' recoveries against the Settling Surgeons. However, neither set of Relators brought a claim against any of the Settling Surgeons prior to the government's publicly announced settlements in 2020.  Relators' complaints not only failed to identify any of the Settling Surgeons as a named defendant, they alleged no FCA violation by any of the Settling Surgeons.  Rather, Relators brought claims against only the payors, not the recipients, of the consulting fee kickbacks.  Regardless of whether Relators' failure to sue the Settling Surgeons was a strategic choice or resulted from a lack of information about the Settling Surgeons' potential liability, Relators' complaints are devoid of factual content alleging that the Settling Surgeons violated each element of the FCA, including scienter.

Aware they did not bring a timely claim against any of the Settling Surgeons, Relators now make three arguments that, if accepted, would require this Court to ignore the FCA's express text and basic principles of civil procedure. First, in 2022, over two years after the government settled with the Settling Surgeons and announced the settlements in public press releases—and over seven years after Relators filed their original complaints—one set of Relators (Miller and Bennett) filed an amended complaint that named the Settling Surgeons and copied nearly verbatim the allegations in the government's 2020 Complaint-In-Intervention. In filing this amended pleading, those Relators implicitly acknowledge the FCA's requirement that relators can share in a recovery only on claims they brought against named defendants. Regardless, the amended pleading fails to justify Relators' right to a share of the settlements with the Settling Surgeons because it pleads procedurally deficient claims that were settled, released, and publicly disclosed years earlier.

Second, Relators seek to avoid the FCA's claim-filing requirement by arguing they should receive a share of settlements that purportedly arose out of the same facts as in their complaints. But Relators' contention ignores the FCA's statutory language, which requires that relators bring a "claim" to be entitled to an award on that claim. Congress' choice of words is notable because elsewhere in the FCA, unrelated to relator awards, Congress referred to matters "arising out of the same facts" or "aris[ing] out of the conduct, transactions, or occurrences."

Third, Relators try to circumvent the claim-filing requirement by seeking a share of the Settling Surgeons' settlements under the FCA's "alternate remedy" provision. However, the alternate remedy provision grants relators an award when the government has settled or recovered a claim brought by the relator in another proceeding, outside of the qui tam action, e.g., administratively or under the common law. The FCA's alternate remedy provision does not obviate the need for a relator to bring a claim against a named defendant.

Finally, the Court should deny Relators' request for discovery. Relators made the request in a half-sentence at the end of their brief, without citing any authority. Whether Relators are entitled to a share of the settlement proceeds recovered from the Settling Surgeons is a question of law and civil procedure. Given that no material facts are in dispute, discovery is unnecessary.

## FACTUAL AND PROCEDURAL BACKGROUND

Relators, all represented by counsel experienced in filing FCA cases, filed their qui tam complaints weeks apart in July 2015. (ECF 1; JM ECF 1). Each complaint named corporate defendants SpineFrontier, Inc. ("SpineFrontier"), KICVentures, LLC, Impartial Medical Expert, LLC ("IME"), and their principal owner, Dr. Kingsley Chin. Relator Birchall also sued the corporate entities of KIC Management Group, Inc., which partially owned SpineFrontier, and AxioMed, LLC, a subsidiary of KICVentures, LLC. Relators Miller and Bennett sued LESSurgeon Institute Florida, LLC, a company owned by Dr. Kingsley Chin, and SpineFrontier's corporate executive, Aditya Humad. There is no dispute that Relators' original complaints failed to name any of the Settling Surgeons as a defendant. Moreover, Relators' original complaints failed to allege that any of the Settling Surgeons had violated the requisite elements of the FCA.

Over the next five years, the government investigated Relators' allegations and other allegations discovered during its investigation, including the Settling Surgeons' potential FCA liability. On February 7, 2020, the government filed a notice of election to partially intervene in Relator Birchall's complaint as to Counts One, Two, and Three against defendants SpineFrontier, KICVentures, LLC, IME, Kingsley Chin, M.D., and KIC Management Group, Inc.; and in Relators Bennett's and Miller's complaint as to Counts I, II, and III against SpineFrontier, KICVentures, LLC, IME, Kingsley R. Chin, M.D., and Aditya Humad, but declined to intervene on all counts against LESSurgeon Institute Florida, LLC. (ECF 54; JM ECF 63). On March 5, 2020, the government filed a Complaint-In-Intervention against SpineFrontier, IME, KIC Management

3

Group, Inc.; KICVentures, LLC, Kingsley Chin, M.D., Aditya Humad, and Vanessa Dudley, the sole employee of IME (collectively, "SpineFrontier Defendants"), alleging that those defendants violated the FCA by paying kickbacks disguised as consulting fees to surgeons to induce their use of SpineFrontier medical devices paid for by Medicare and TRICARE.  (ECF 58, JM ECF 67). The government's March 5, 2020 Complaint-In-Intervention and press release that day[1] referenced settlements the government reached with five Settling Surgeons and alleged extensive facts about those Settling Surgeons' knowing and willful receipt of kickbacks from the SpineFrontier Defendants.  (*See* Summary Chart, Exh. A hereto).  On April 24, 2020, the government publicly announced a settlement with a sixth Settling Surgeon.[2]

The government and Relators served their respective complaints on the SpineFrontier Defendants in June 2020.  (ECF 64–77; JM ECF 82–87).  Shortly thereafter, the SpineFrontier Defendants and the government began settlement negotiations.  To facilitate the settlement discussions with the government, the SpineFrontier Defendants filed a series of motions requesting an extension of the deadline to answer the government's Complaint-In-Intervention.

On August 10, 2022, more than two years after the government publicly announced that it had settled with the Settling Surgeons, Relators Miller and Bennett filed, in the now-unsealed case, an amended complaint that added the Settling Surgeons and two other physicians as defendants. (JM ECF 112).  In their amended complaint, Relators Miller and Bennett copied nearly verbatim the allegations set forth in the government's March 2020 Complaint-In-Intervention as to the

---

[1]    *See* https://www.justice.gov/usao-ma/pr/us-attorney-sues-spinal-device-company-and-its-executives-allegations-they-paid-kickbacks (last accessed June 13, 2024).

[2]    *See* https://www.justice.gov/usao-ma/pr/surgeon-agrees-pay-175-million-resolve-allegations-he-accepted-kickbacks-spinefrontier (last accessed June 13, 2024).

Settling Surgeons.  *See* Exhibit A.  To date, Relators Miller and Bennett have not served the amended complaint on any Settling Surgeon.

On November 27, 2023, before the SpineFrontier Defendants had responded to any complaint in this case, the government, Relators, and the SpineFrontier Defendants entered into an FCA settlement.  (ECF 160; JM ECF 133).  The SpineFrontier Defendants agreed to pay between $1,085,000 and $234,732,075, depending on certain financial contingencies, of which the first-to-file Relator(s) will receive a share of between 15 and 25 percent of the proceeds.  Relators agreed the settlement was fair, adequate, and reasonable under all the circumstances.  On January 16, 2024, the parties filed a Joint Stipulation of Partial Dismissal, but advised the Court of remaining issues to be resolved, including the amount Relators will receive from the proceeds collected from the SpineFrontier Defendants and whether Relators are entitled to an award of the government's 2020 settlements with the Settling Surgeons.  (*Id.*)

The government and Relators engaged in good faith negotiations and made progress toward a resolution of the Relators' award from the proceeds recovered from the SpineFrontier Defendants.  However, the parties were unable to reach a resolution given their dispute over whether Relators are entitled to an award from the government's settlements with the Settling Surgeons.  At a hearing on April 18, 2024, the government and Relators notified the Court of their dispute and asked the Court to rule on whether Relators are entitled to an award of the government's settlements with the Settling Surgeons.  Once the Court has ruled on this issue, the government and Relators will confer and continue negotiations on the Relators' award.

## FALSE CLAIMS ACT

The FCA imposes liability on any person who, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), "to an officer, employee, or agent of the United States," *id.* at § 3729(b)(2)(A)(i).

5

The government can bring a civil action on its own against an alleged false claimant, *id.* at § 3730(a), or a person known as a "relator" can bring a qui tam civil action in the government's name "for the person and for the United States Government." *Id.* at § 3730(b)(1). A relator's complaint must be "filed in camera" and "shall remain under seal" for a period while the government investigates. *Id.* at § 3730(b)(2). If the government elects to intervene, then "the action shall be conducted by the Government." *Id.* at § 3730(b)(4)(A). If the government does not intervene, the relator "shall have the right to conduct the action." *Id.* at § 3730(b)(4)(B). In either event, a defendant need not respond to a complaint until "the complaint is unsealed and served upon the defendant." *Id.* at § 3730(b)(3). If the government intervenes, the relator would "receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending on the extent to which the person substantially contributed to the prosecution of the action." *Id.* at § 3730(d)(1).

## ARGUMENT

Relators' motion should be denied for four reasons. First, Relators do not qualify for a share of the United States' recoveries with the Settling Surgeons under the qui tam provisions of the FCA, 31 U.S.C. § 3730(d)(1). When the government settled with the Settling Surgeons, Relators had not filed a qui tam action or brought an FCA claim against the Settling Surgeons, nor had the government intervened in a qui tam action against the Settling Surgeons. Relators' failure to bring a claim against the Settling Surgeons is critical because the First Circuit applies a claim-by-claim analysis when analyzing a relator's award under the FCA. Moreover, filing an amended complaint that largely regurgitated information uncovered by the government in its investigation of the Settling Surgeons—and doing so years after the settlements—does not entitle a relator to an award under the FCA. Indeed, such an amended pleading runs afoul of the FCA's public disclosure

6

bar, which prohibits amending a complaint to include claims against the Settling Surgeons post facto. *See* 31 U.S.C. § 3730(e)(3) and § 3730(e)(4)(A)(i).

Second, Relators do not qualify for a share as an alternate remedy under § 3730(c)(3) of the FCA. Based on the statutory language and case law, this provision does not authorize an award for a relator who failed to initiate a qui tam action for the FCA claims that the government pursued. Nor is the alternate remedy provision applicable to an FCA settlement.

Third, if adopted, Relators' arguments would cause uncertainty, unintended consequences, and inefficiencies. The Court should maintain the clear, bright-line rule in the statutory text and First Circuit precedent that a relator's award is limited to the claims they brought.

Lastly, the Court should deny Relators' half-sentence request for discovery, which is irrelevant to whether Relators qualify for a share of the settlements with the Settling Surgeons.

## I.   Relators Are Not Entitled to a Share of the Settlements with Settling Surgeons Under Section 3730(d)(1)

Relators seek a share of the government's settlements with the Settling Surgeons "pursuant to 31 U.S.C. § 3730(d)(1)." (Mem. in Support of Relators' Mot. ("Mem.") at 3, ECF 189). In assessing if a relator is entitled to a "share of the government's settlement," a court "confine[s] [its] review to the pleadings and to 'facts susceptible of judicial notice.'" *United States v. Millenium Labs., Inc.*, 923 F.3d 240, 251 (1st Cir. 2019), *cert. denied sub nom. Est. of Cunningham v. McGuire*, 140 S. Ct. 851 (2020). However, as discussed below, the Relators have not met the FCA's prerequisites to entitle them to a share of the settlements with the Settling Surgeons.

### A.   The Legal Standard for a Relator's Share Under the FCA

With certain conditions, § 3730(d)(1) of the FCA entitles a relator to a share of "the proceeds of the action or settlement of the claim." The "proceeds of the action" means "proceeds of an action litigated to judgment," *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 372 (8th

Cir. 2015) (en banc), and thus is not relevant here.  Rather, the question here is whether any Relator is entitled to a share of "the proceeds of the . . . settlement of the claim[s]" as to the Settling Surgeons.  31 U.S.C. § 3730(d)(1).

Under § 3730(d)(1), a relator may receive a share of settlement proceeds if three conditions are met: (1) relator must have brought a claim in a qui tam action; (2) relator must have brought the claim that was settled; and (3) the government must have intervened in that claim in the qui tam action.  *See Millenium*, 923 F.3d at 252; *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 158 (1st Cir. 2022).  In addition, under § 3730(b)(5), "only the first-to-file relator can claim the relator's share of the settlement proceedings for each claim."  *Millenium*, 923 F.3d at 252.  *See also* 31 U.S.C. § 3730(b)(5).

As a threshold matter, in the First Circuit, a relator must bring an action and assert a claim against a defendant to be entitled to a share of recoveries—and attorney's fees and costs—from a settlement with a defendant.  *See Millenium*, 923 F.3d at 252 ("To be entitled to the relator's share under paragraph 3730(d)(1), a relator must be a person who 'br[ings]' 'an action under . . . subsection [3730(b)]").  An action under § 3730(b) is a civil action with a claim "for a violation of section 3729" filed against "the defendant."  31 U.S.C. § 3730(b)(1), (3).  "[O]ne 'quirk[]' of the FCA is that 'the statute is based on the model of a single-claim complaint' even though many qui tam actions involve multiple claims."  *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 159 (1st Cir. 2022) (quoting *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101 (3d Cir. 2000)).  Thus, "the weight of authority, including in [the First] [C]ircuit, has continued to utilize a claim-by-claim analysis in applying the FCA's qui tam provisions."  *AthenaHealth*, 56 F.4th at 160.  These are not ministerial requirements but statutorily imposed conditions necessary to establish a relator's right to an award of the settlement proceeds.

**B.      Relators Did Not Meet the Prerequisites for a Share of the Settling Surgeons' Settlements**

Relators have not met the FCA requirements for a share of the settlements with the Settling Surgeons.   Here, Relators brought claims in their respective qui tam actions against the SpineFrontier Defendants, but neither set of Relators brought any claims against the Settling Surgeons until two years after the government's 2020 settlements.  Therefore, Relators are not entitled to a share of the proceeds of settlements with the Settling Surgeons.  *Millenium*, 923 F.3d at 252 ("'The relators' right to recovery is limited to a share of the settlement of the claim that they brought.'") (quoting *Rille*, 803 F.3d at 372).  The language of § 3730(d)(1) makes clear that a relator's award applies only to proceeds of "'the settlement of *the claim*'"—not to claims that were not brought.  *Rille*, 803 F.3d at 372 (quoting § 3730(d)(1)) (emphasis added); *id.* ("The settlement language of § 3730(d)(1) thus does not extend to a different claim that is settled by the government when that claim was not originally 'brought by' the relator").  The First Circuit has adopted this holding: "We look to whether the government's recovery from [a settling party] constitutes the 'proceeds of the . . . settlement of the claim' [relator] brought."  *Millenium*, 923 F.3d at 252 (quoting § 3730(d)(1)).

Relators, represented by experienced FCA counsel, admit their complaints "did not name" any of the Settling Surgeons "as party-defendants" before the government's settlements in 2020. (Mem. at 3).  This fact is dispositive.  Because Relators did not bring a claim against the Settling Surgeons, they are not entitled under § 3730(d)(1) to a share of the settlements with them.

Contrary to Relators' argument, references to Settling Surgeons in paragraphs of their complaints or exhibits thereto are not sufficient to state a claim against the Settling Surgeons. (Mem. at 6–8).  Mentioning an individual in a complaint or exhibit to a complaint does not convert that individual to a "defendant" or the allegation into a "claim" against them as required by the

Federal Rules of Civil Procedure and the FCA.  In federal court, "a claim for relief" must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "The title of the complaint must name all the parties," Fed. R. Civ. P. 10(a), and the complaint must plead factual content showing that "the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under the FCA, a claim for "a violation of section 3729" is filed against "the defendant."  31 U.S.C. § 3730(b)(1) and (2).  Simply mentioning the Settling Surgeons in the complaints did not satisfy the requirements in Rules 8 and 10 and the FCA to bring a claim against the Settling Surgeons before the government's 2020 settlements.

Relators' failure to name the Settling Surgeons was not a technical or minor omission. Under the FCA, a "defendant's identity is a material element of a fraud claim."  *In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 962 (10th Cir. 2009) (holding that, for a relator's award, "we would not consider a complaint against an entirely different defendant to be stating the same claim").  After all, for a defendant to be liable under the FCA, a defendant must have conspired or engaged in "knowing" acts to violate the FCA.  31 U.S.C. § 3729(a)(1) and § 3729(b)(1).

In addition, Relators are not eligible for an award because, as a "condition[] for receipt of a relator's share" under § 3730(d)(1), "the relator must have brought an 'action' in which the government intervenes."  *AthenaHealth*, 56 F.4th at 158 (quoting 31 U.S.C. § 3730(d)(1)). "[G]overnment intervention in an 'action' under the first sentence of § 3730(d)(1) means government intervention in an individual claim."  *Id.* at 160.  Relator Birchall has never brought a claim against the Settling Surgeons (*see* ECF 1); therefore, the government has not intervened in such claims.  (ECF 58).   Relators Miller and Bennett did not attempt to bring claims against the Settling Surgeons until over two years after the settlements were executed (JM ECF 112);

therefore, the government could not and did not intervene in the already-settled claims.  Relators failed to meet this "condition[] for receipt of a relator's share." *AthenaHealth*, 56 F.4th at 158.

Likewise, given that "receipt of a relator's share is a precondition for recovery of fees," *AthenaHealth*, 56 F.4th at 157, Relators could not seek attorneys' fees from the Settling Surgeons "because the government did not intervene in" any claim by Relators against the Settling Surgeons. *Id.* at 161.  Notably, Relators here seek attorneys' fees from only the SpineFrontier Defendants, not the Settling Surgeons, thus tacitly recognizing they could not recover attorneys' fees on claims they did not bring.  (*See* ECF 160; JM ECF 133).

Further, the claims Relators Miller and Bennett brought against the Settling Surgeons over two years after the government had settled with the Settling Surgeons were barred.  Miller and Bennett copied the allegations nearly verbatim from the government's publicly filed 2020 complaint, *see* Exh. A, expressly citing the government's settlements with the Settling Surgeons. (JM ECF 112 ¶ 138).  The government settled the same claims against the same surgeons in 2020 and released the Settling Surgeons from any FCA liability for those claims.  (*Id.*; Mem. at 9–10).  Thus, the claims Miller and Bennett purported to bring against the Settling Surgeons in 2022 were procedurally deficient, legally unfounded, and ineligible for a relator's award.  *See United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007) ("The [FCA] evinces no intent to compensate relators who bring unfounded § 3729 claims, whether the claims are legally or factually unfounded"); *see also* 31 U.S.C. § 3730(e).

Relators Miller and Bennett's amended complaint is a legal nullity for two other reasons. First, the pleading "violated the qui tam filing and service requirements" that require "a relator filing a new claim" to file the complaint in camera and "under seal for at least 60 days." *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 115 & n.4 (1st Cir. 2014) (citing

31 U.S.C. § 3730(b)(2).  Not only did Miller and Bennett violate the qui tam filing requirements by filing the amended complaint publicly (JM ECF 112), they then failed to serve the pleading on any of the Settling Surgeons "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m). While Miller and Bennett timely served their initial complaint in 2020, their violation of the qui tam filing requirements and multi-year failure to serve the 2022 amended complaint shows they knew they could no longer legally pursue the settled claims against the Settling Surgeons.

### C.   Out-of-Circuit Cases Do Not Warrant a Different Result

Ignoring First Circuit precedent, Relators cite two out-of-circuit district court cases and one vacated out-of-circuit decision to support their entitlement to an award based on claims they did not bring.  However, each case is distinguishable and would be decided differently if the lower court had followed the FCA's text and First Circuit precedent.

### 1.   Under First Circuit Precedent, Share Eligibility Is Based on a Claim-by-Claim Analysis, Not Equitable or Purpose-Based Considerations

Relators rely most prominently on *United States v. Najjar*, 120 F. Supp. 3d 1322 (M.D. Fla. 2015), a case that is neither precedential nor instructive in the First Circuit.  (Mem. at 12–14). The *Najjar* court awarded a relator's share due to its perception of "the purposes behind the [FCA]."  120 F. Supp. 3d at 1326.  In contrast, in the First Circuit, "a claim-by-claim analysis" is required to determine eligibility for relator's award.  *See, e.g.*, *AthenaHealth*, 56 F.4th at 160; *Millenium*, 923 F.3d at 253.  "'[T]he relators' right to recovery is limited to a share of the settlement of the claim that they brought.'"  *Millenium*, 923 F.3d at 252 (quotation omitted).

In addition, *Najjar* dealt with an "(unusual) factual circumstance" in which relator's complaint alleged detailed factual content of fraud committed by two brothers—one who acted as "power of attorney" in favor of the other—but named only one brother as a defendant.  120 F. Supp. 3d at 1326–27.  There are no such unusual facts here.  Relators, represented by experienced

12

FCA counsel, sued the alleged payors of the kickbacks, not the recipients.  Unlike *Najjar*, every aspect of Relators' complaints in 2015 is consistent with either a strategic choice or an inability to name the Settling Surgeons as defendants because of a lack of information about their potential FCA liability.  The titles of Relators' complaints omit the Settling Surgeons; the "counts" in Relators' complaints omit FCA claims against the Settling Surgeons; and the Relators' complaints omit factual allegations the Settling Surgeons "knowingly" violated the FCA, 31 U.S.C. § 3729(a)(1), or "knowingly and willfully solicit[ed] or receive[d]" remuneration in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(1).  *Najjar*'s factual dissimilarity to this case diminishes any persuasive effect and does not warrant upending years of First Circuit precedent.

### 2.   Relators Cannot Manufacture Share Eligibility by Naming the Settling Surgeons in an Amended Complaint Years After the Settlements

Second, Relators Miller and Bennett rely on *United States v. Bisig*, No. 100-cv-335, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005), to argue that an amended complaint can "cure" an "omission of a defendant in a complaint," "enabling the relator to share in the [g]overnment's recovery from that defendant."  (Mem. at 14–15).  Such reliance fails on legal and factual grounds.  In *Bisig*, the relator sued a company, but not the company's individual owner and operator.  *Id.* at *7–8.  As with *Najjar*, the court in *Bisig* neither applied a claim-by-claim analysis, nor limited relator's award to the claim relator brought, as the First Circuit and the FCA require.  *Id.*  Reflecting its outlier status, *Bisig* awarded relator an award of a criminal forfeiture, which subsequent courts have determined is not consistent with the FCA.  *See, e.g.*, *United States v. Kurlander*, 24 F. Supp. 3d 417, 423 (D.N.J. 2014) (finding "the *Bisig* analysis to be unpersuasive because it ignores long-determined fundamentals of our law, civil and criminal"); *United States v. Lustman*, No. 05-cr-40082, 2006 WL 1207145, at *3 (S.D. Ill. May 4, 2006) ("Surely Congress would have explicitly specified criminal prosecutions as an 'alternate remedy' if it intended the result urged here").

13

Nor can the Relators rely on *Bisig* factually.  Birchall did not file an amended complaint and cannot rely on this argument.  Miller and Bennett cannot rely on *Bisig* because in that case the relator filed an amended complaint twelve days after serving an initial complaint.  2005 WL 3532554, at *7.  In contrast, Miller and Bennett did not file an amended complaint against the Settling Surgeons until over two years *after* the government settled with the Settling Surgeons and served its Complaint-In-Intervention on the SpineFrontier Defendants.  (JM ECF 112.)

### 3. Relators Cited a Vacated Panel Decision in *Rille*, Not the En Banc Holding Adopted by the First Circuit

Lastly, in a footnote Relators rely on a panel decision vacated by the en banc *Rille* court.  (Mem. at 13 n.6).  Relators admit the vacated panel decision is not precedential, even in the Eighth Circuit.  *Id.*  But Relators focus little on the precedential decision, the *Rille* en banc opinion, which is instructive because it held that "relators' right to recovery is limited to a share of the settlement of the claim that they brought."  *Rille*, 803 F.3d at 372.  Notably, the First Circuit adopted the *Rille* en banc holding in *Millenium*, 923 F.3d at 252.  Relators also omit discussing the end result of *Rille*.  Applying the en banc ruling, the district court on remand held that relators "are not entitled to proceeds from the claim the government settled" with a company because that company "has never been named as a defendant in this case" and "the claim that the government settled with [the company] was never raised by Relators."  *United States ex rel. Rille v. Pricewaterhouse Coopers, LLP*, No. 4:04-CV-988, 2017 WL 11683682, at *1, 3 (E.D. Ark. Feb. 8, 2017).

## II. Relators Are Not Entitled to a Share of the Settling Surgeons' Settlements as an Alternate Remedy Under Section 3730(c)(5)

In the alternative, Relators seek an award from the proceeds of the Settling Surgeons' settlements as an "alternate remedy" under 3 U.S.C. § 3730(c)(5).  Under the alternate remedy provision, "[n]otwithstanding subsection (b)," which concerns the government's right to intervene in a qui tam action, "the [g]overnment may elect to pursue its claim through any alternate remedy

available to the [g]overnment, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5).  "If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section." *Id.*

For two reasons, Relators are not entitled to a share of the Settling Surgeon settlements as an alternate remedy: (1) Relators did not bring a claim against any Settling Surgeon; and (2) settlement of an FCA claim is not an alternate remedy.

### A.     Relators Did Not Bring a Claim Against Any of the Settling Surgeons

Relators cannot use the alternate remedy provision to circumvent the rule that "'relators' right to recovery is limited to a share of the settlement of the claim that they brought.'"  *Millenium*, 923 F.3d at 252 (quoting *Rille*, 803 F.3d at 372).  Under § 3730(c)(5) of the FCA, the "alternate remedy must be used to pursue the government's 'claim.'"  *United States ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 55 (D.C. Cir. 2021) (quoting § 3730(c)(5)).  The "claim" refers to a cause of action for a violation under section 3729 that "otherwise could be prosecuted through a qui tam suit under subsection 3730(b) of the [FCA]."  *Id.*  If the government pursues such claim "in another proceeding," then the relator who "initiat[ed] the action" has "the same rights" in such proceeding as if "the action had continued" under the qui tam provisions.  31 U.S.C. § 3730(c)(5).  Given "the FCA's model of a single-claim complaint," *AthenaHealth*, 56 F.4th at 160, an "action" that relator "initiat[ed]" and could "continue[]" is an FCA claim that relator brought in a qui tam suit. 31 U.S.C. § 3730(c)(5).  Thus, a relator can benefit from § 3730(c)(5) only if the relator brought the FCA claim that the government pursues instead of the qui tam action.

The government, however, did not pursue any claim by Relators against the Settling Surgeons.  Relators cannot dispute they did not "initiate" a qui tam action against the Settling Surgeons and did not "initiate" a claim for a violation of 3729 against them at the time of the

settlements.  (Mem. at 3 (admitting Relators "did not name" Settling Surgeons)).  Nor can Relators dispute they could not have "continue[d]" any claim or action against the Settling Surgeons at the time of the 2020 settlements because Relators had not filed any such claim or action.  (*Id.*)

Put differently, § 3730(c)(5) grants a relator "the same rights" in the alternate proceeding as in the qui tam action.  But here, Relators had no rights in any qui tam action against the Settling Surgeons, as no such action existed.  Relators cannot use § 3730(c)(5) to grant them a right to an award for which they are ineligible.  *See, e.g.*, *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 26 (2d Cir. 2019) (holding qui tam claim is prerequisite to alternate remedy); *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 162 (5th Cir. 2014) (same).

Relators' eligibility for an award under the alternate remedy provision does not depend on whether the government's settlements with the Settling Surgeons arose from the same facts as in the Relators' complaints, as Relators argue.  (Mem. at 16–18).  Even ignoring the material differences between the Settling Surgeon settlements and the allegations in Relators' complaints, "[t]he problem is that Congress wrote a different statute than the one that [Relators] envision[]." *Novo A/S*, 5 F.4th at 57.  The FCA "does not reward relators any time the government pursues any 'alternate claim or cause of action' arising from the same facts and circumstances."  *Id.* (quotation omitted).  The alternate remedy provision is not a catch-all for relators to recover on claims they did not bring.  Instead, "the nature of the legal claim," "not the commonality of facts," "determines a relator's right to share in an alternative recovery."  *Id.*

When Congress sought to grant relators a benefit, it did so explicitly in the statute.  *See, e.g.*, 31 U.S.C. § 3730(c)(5) and (d)(1).  "[I]f Congress had wanted the relator's recovery for an alternate remedy to turn on whether the government's action arose out of the same facts, it would have used the language that it employed in the immediately preceding subsection" about matters

16

"'arising out of the same facts.'" *Novo A/S*, 5 F.4th at 57 (quoting 31 U.S.C. § 3730(c)(4)).  Or Congress would have used the language from § 3731(c) about claims that "arise[] out of the conduct, transactions, or occurrences" in the qui tam complaint.  Instead, in the alternate remedy provision (as in the relator's share provision), Congress tied a relator's recovery to the "claim" the relator brought and the government pursued.  31 U.S.C. § 3730(c)(5) and (d)(1).  This "is a textual distinction that makes a difference." *Novo A/S*, 5 F.4th at 57 (citing *Salinas v. United States R.R. Retirement Board*, 592 U.S. 188, 196 (2021) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).  A relator's recovery of an alternate remedy depends on the specific claim "initiate[d]" by the relator and "pursued" by the government, 31 U.S.C. § 3730(c)(5), "not [on] the facts from which the claim arose." *Novo A/S*, 5 F.4th at 57.

### B.    An FCA Settlement Is Not an Alternate Remedy

Even if Relators had filed claims against the Settling Surgeons before the settlements were publicly announced, which Relators did not, an FCA settlement is not an alternate remedy.   In § 3730(c)(5), the opening clause "[n]otwithstanding subsection (b)" "signifies that the alternate remedy is an alternative that the government can choose instead of its intervention, participation, and pursuit of a remedy in a private qui tam lawsuit—the subject of subsection (b)." *Novo A/S*, 5 F.4th at 54.  "After all, an 'alternate' remedy must be in place of something else." *Id.*  In § 3730(c)(5), "the 'notwithstanding' clause tells us that the default choice is the remedy the government could have pursued under the qui tam provision of the [FCA]." *Id.*  As noted in Section I above, if certain conditions are met, the qui tam provisions entitle a relator to a share of "the proceeds of the . . . settlement of the claim." 31 U.S.C. § 3730(d)(1).  A settlement of an FCA claim is not an "alternate remedy [that] is pursued in another proceeding." 31 U.S.C. § 3730(c)(5).

Rather, it is a pursuit of a remedy under the FCA.  *Novo A/S*, 5 F.4th at 54.  Thus, § 3730(c)(5) does not apply to the government's FCA settlements with the Settling Surgeons, and Relators' claim to a share must be evaluated under § 3730(d)(1).  *See* Section I, *supra*.

## III. Relators' Argument, If Adopted, Would Cause Significant Uncertainty, Unintended Consequences, and Inefficiencies

The FCA's text and First Circuit precedent have a bright-line rule for whether a relator qualifies for a share of a settled claim:  Did relator bring the claim in her qui tam complaint?  The answer is "quickly and easily determinable" from "the four corners of the relevant complaints." *Millenium*, 923 F.3d at 253.  This clear rule promotes certainty, efficiency, and reduces relator's award disputes between the relator and the government.

The rule also aligns with the purposes of the qui tam provisions:  to "'encourag[e] citizens to act as whistleblowers,'" while "'preventing opportunistic suits.'"  *Id.* at 252 (quoting *Wilson*, 750 F.3d at 117).  This threshold requirement spurs relators "'to dig out the facts and launch the initial action,'" notifying the government of conduct by individuals and entities that violate the FCA. *Id.* (quoting *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 364 (7th Cir. 2010)).  Moreover, it deters "parasitic" suits, where relators learn of government's settlements with non-defendants and then sue those settling parties years later, copying allegations "within the public domain."  *Wilson*, 750 F.3d at 117.

By contrast, Relators' argument, if adopted, would introduce uncertainty and inefficiencies and cause unintended consequences.  For example, when multiple relators file qui tam complaints, it would be unclear which relator is eligible for a relator's award.  Under the Relators' approach, what standard would be applied to assess whether Birchall or Miller and Bennett were the first-to-file and thus entitled to a relator award from the Settling Surgeons' settlements?  Does the answer change because Miller and Bennett copied allegations in the public domain years after the

18

government settled?  Further, although only Miller and Bennett named Mr. Humad as a defendant in their qui tam complaint, under Relators' approach, would Birchall be entitled to a relator award from Mr. Humad's settlement?  Relators have not articulated any rule grounded in the text of the FCA or First Circuit precedent to answer these questions.  The complications only grow when we consider complaints filed by relators in multiple districts.

Relators' approach also would upset the reasonable expectations of settling parties.  The Settling Surgeons settled years before Relators Miller and Bennett attempted to sue them.  Would Miller and Bennett's post hoc amended complaint, copying the government's public allegations from years earlier, entitle Relators to seek attorneys' fees, costs, and expenses from the Settling Surgeons?  If so, this could impose unpredictable costs on those who settle and discourage settlements more broadly, resulting in increased and unnecessary litigation.  Equally concerning, it could spur a flood of parasitic filings copying government allegations in the public domain.

Further, Relators' approach would have unintended consequences on other aspects of FCA cases.  Under the FCA, the government must decide whether to "elect to intervene and proceed with the action," *i.e.*, whether to pursue the claim the relator brought.  31 U.S.C. § 3730(b)(2). However, Relators' approach would appear to require the government to make intervention decisions as to any person involved in overlapping facts or mentioned anywhere, even briefly, in a complaint or attached chart.  This is unworkable, particularly given how easy it is for a relator to attach a spreadsheet listing every surgeon in the country.

Equally, if not more, important, the potential burdens on the judiciary would increase substantially.  Not unlike the instant matter, courts would have to intercede and determine a relator's eligibility for an award of a settlement in numerous cases throughout the country having

tangential applicability, perhaps well after those settlements occurred.[3]  Under Relators' approach, courts would need to make such decisions without statutory directives to guide them.

## IV.     The Court Should Deny Relators' Request for Discovery

In a half-sentence at the end of their brief, Relators seek "to conduct limited discovery into the circumstances of the Government's recovery from the [Non-Defendant] Surgeons."  (Mem. at 21).  Relators have not cited authority for such discovery, or explained what discovery they would seek, how it would be "limited," or how it is relevant to relator's share eligibility.  (*Id.*)

The Court should deny Relators' discovery request.  Relator's share issues are meant to be "quickly and easily determinable," based on "the four corners of the relevant complaints." *Millenium*, 923 F.3d at 253.  In assessing relator's share issues, a court "confine[s] [its] review to the pleadings and to 'facts susceptible of judicial notice.'"  *Id.* at 251 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).  Here, based on the settlement agreements, Relators know what claims the government settled with the Settling Surgeons and for what amounts.  (Mem. at 9–11).  No discovery is needed or even relevant to determine whether any Relator is entitled to a share of those settlements.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Relators' motion for a share of the United States' settlements with the Settling Surgeons.

---

[3]     Relators argue that the existing claim-filing requirement would spur relators to name "fringe" persons as defendants (Mem. at 20), but that has not been a significant problem to date, and Federal Rules of Civil Procedure 8, 9, and 11 discourage parties from bringing claims without evidentiary support.  Further, relators know the government may decline to intervene in their qui tam claims, meaning the relators may need to litigate against those defendants.

Date:  June 14, 2024                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Attorney General
                                        Civil Division

                                        JOSHUA S. LEVY
                                        Acting United States Attorney

                                        By: */s/ Steven T. Sharobem*
                                        STEVEN T. SHAROBEM
                                        Assistant United States Attorney
                                        John J. Moakley Courthouse
                                        1 Courthouse Way, Suite 9200
                                        Boston, MA 02210
                                        (617) 748-3100
                                        steven.sharobem@usdoj.gov

                                        JAMIE ANN YAVELBERG
                                        PATRICIA L. HANOWER
                                        DOUGLAS ROSENTHAL
                                        CHRISTOPHER TERRANOVA
                                        Civil Division
                                        U.S. Department of Justice
                                        Post Office Box 261
                                        Ben Franklin Station
                                        Washington, DC 20044
                                        (202) 514-2000
                                        douglas.j.rosenthal@usdoj.gov
                                        christopher.terranova@usdoj.gov

                                        *Attorneys for the United States of America*

**EXHIBIT A**

In their 2022 amended complaint (JM ECF 112), Relators Miller and Bennett copied the following Settling Surgeon allegations from the Government's 2020 complaint (JM ECF 67):

| Government's Complaint (3/5/20) [JM ECF 67] | Miller-Bennett's Amended Complaint (8/10/22) [JM ECF 112] | Present in Miller-Bennett's Original Complaint (7/15/15)? [JM ECF 1] |
|---|---|---|
| **Dr. John Atwater** | | |
| ¶¶ 96, 99–100 | ¶¶ 97, 104–05 | No |
| ¶¶ 105, 107–112 | ¶¶ 138, 140–145 | No |
| ¶ 145 | ¶ 100 | No |
| **Dr. Paul DeGenova** | | |
| ¶¶ 99–100, 103 | ¶¶ 104–05, 108 | No |
| ¶¶ 105, 113–118 | ¶¶ 138, 146–151 | No |
| ¶ 145 | ¶ 100 | No |
| **Dr. Agha Khan** | | |
| ¶¶ 99–100 | ¶¶ 104–05 | No |
| ¶¶ 105, 119–126 | ¶¶ 138, 152–159 | No |
| ¶ 145 | ¶ 100 | No |
| **Dr. Michael Murray** | | |
| ¶ 99 | ¶ 104 | No |
| ¶¶ 105, 127–133 | ¶¶ 138, 160–166 | No |
| ¶ 145 | ¶ 100 | No |
| **Dr. Joseph Shehadi** | | |
| ¶¶ 99–100, 103 | ¶¶ 104–05, 108 | No |
| ¶¶ 105, 134–140 | ¶¶ 138, 167–173 | No |
| ¶ 145 | ¶ 100 | No |
| **Dr. Jeffrey Carlson** | | |
| ¶ 145 | ¶ 100 | No |